**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT LONDON**

**TAMMY WEBB,** ***Administratix of the Estate of*** **Terri Beth Mays,**

**Plaintiff,**

**v.**

**WHITLEY COUNTY, KENTUCKY,** ***et al.*****,**

**Defendants.**

**CASE NO. 6:23-CV-188-KKC**

**OPINION AND ORDER**

This matter is before the Court on Defendant Southern Health Partners, Inc.'s (SHP) Renewed Motion for Summary Judgment. (R. 126). SHP argues that Defendant Karen Bennett-Baker, a nurse practitioner, is an independent contractor and not an in any agency relationship with the company. After reviewing the record and applicable case law, Defendant Southern Health Partner's Motion for Renewed Summary Judgment is denied.

## I. BACKGROUND

Terri Beth Mays died on November 4, 2021, while she was an inmate at the Whitley County Detention Center (WCDC). (*See generally* R. 74). Mays' Estate (Plaintiff) alleges that WCDC personnel, nurses, and medical providers were responsible for ensuring her health and safety while she was in their custody, and they failed to address her serious medical needs and acted with deliberate indifference to those needs. (R. 1 at 4).

On April 7, 2016, Karen Bennett-Baker, a nurse practitioner, and SHP, a healthcare staffing service under contract with WCDC (R. 39-1 at 2), entered into a contractual agreement where Bennett-Baker would "provide medical care services for SHP." (R. 126-2). Plaintiff brought deliberate indifference and negligence claims against Bennett-Baker and claims against SHP under theories of vicarious liability and *respondeat superior* (Count VI).

SHP filed a Renewed Motion for Summary Judgment requesting that the Court find that Defendant Karen Bennett-Baker is an independent contractor and not an employee of SHP. If Bennett-Baker is an independent contractor, SHP cannot be held liable under the vicarious liability and *respondeat superior* theories alleged by Plaintiff. In response, Plaintiff argues that Bennett-Baker and SHP were in an agency relationship or, alternatively, that SHP be held liable under the theory of ostensible agency.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to a material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and quotation marks omitted). All evidence, facts, and inferences must be viewed in the light most favorable to the nonmoving party. *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

To overcome a motion for summary judgment, it is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The nonmoving party must provide more than a scintilla of evidence," or, in other words, "sufficient evidence to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Truck W. R.R., Inc.*, 509 F.3d 265. 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 252 (1986)).

Summary judgment must be entered if, "after adequate opportunity for discovery," a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 940 (6th Cir. 1995) (quoting *Celotex Corp.*, 466 U.S. at 317 (internal quotation marks omitted)).

## III. ANALYSIS

### *A. Agency Relationship*

SHP argues that it cannot be held vicariously liable for the actions of nurse Bennett-Baker because she is an independent contractor. Plaintiff, however, argues that the contract between the parties is not determinative and that there is a genuine issue of material fact as to whether Bennett-Baker was an employee of SHP. Both sides cite the contract language and circumstantial evidence in their arguments.

The doctrine of *respondeat superior*, or vicarious liability, holds an employer responsible for the wrongful actions of their employees or agents in certain circumstances. *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005). Actions of independent contractors generally do not create liability for their employers. *Mills Farm Supply v. Ellis*, 878 S.W.2d 803, 804 (Ky. Ct. App. 1994); *see also Nazar v. Branham*, 291 S.W.3d 599, 606 (Ky. 2009) (stating a principal may be held vicariously liable for acts of his agent but not for acts of an independent contractor).

The parties made their arguments using the nine-factor test for determining if an individual is an independent contractor in *Sam Horne Motor & Implement Co. v. Gregg*, 179 S.W.2d 755, 756 (Ky. 1955). Kentucky, however, adopted a tenth factor in *Ky. Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Ky., Inc.*, 91 S.W.3d 575, 579 (Ky. 2002). *See also* Restatement (Second) of Agency § 220(2). Those ten factors are:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and place of work for the individual doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relationship of master and servant; and

(j) whether the principal is or is not a business.

*Ky. Unemployment Ins. Comm'n*, 91 S.W.3d at 579 (quoting Restatement (Second) of Agency, § 220(2) (1958)). One factor is not "of greater importance than the others" and each case must be "resolved on its own facts." *Id.* at 580.

While no factor is dispositive, the factor of control has traditionally been informative in determinations of agency relationships. An individual is an agent if "the principal has the power or responsibility to control the method, manner, and details of the agent's work." *Nazar*, 291 S.W.3d at 606–07 (quoting *City of Winchester v. King*, 266 S.W.2d 343, 345 (Ky. 1954)). An individual who decides how to carry out their work, with a principal who is only concerned "about

the end result," is an independent contractor. *Id.* at 607 (quoting *Pancake v. Cull*, 338 S.W.2d 391, 932 (Ky. 1960)).

Both parties rely on the Independent Contractor Agreement (hereinafter contract) between SHP and Bennett-Baker. (R. 126-2). The parties disagree on the amount of control exercised by SHP under the contract. SHP points to paragraph six of the contract, which states that Bennett-Baker "shall be acting as an independent contractor." (R. 126-2 ¶ 6). The contract further states:

> SHP shall exercise no control over the professional practice of medicine by Nurse Practitioner in providing services under this Agreement and SHP shall have no retained right of control, express or implied, over the manner in which Nurse Practitioner performs any services which in any way involved the practice of medicine under this Agreement.

(*Id.*) Plaintiff rebuts this contractual language by pointing to a section that states, "SHP is responsible for providing medical services by a Nurse Practitioner." (R. 139 at 7; 126-2 at 1). Additionally, Plaintiff points to other provisions where SHP maintains control or requires action by Bennett-Baker. Some of those provisions state that Bennett-Baker must: (1) work for two hours a week at the jail (R. 126-2 ¶ 1.3); (2) be added to SHP's malpractice insurance policy (*Id.* ¶ 1.4(a)); review protocol and formularies policies established by SHP (*Id.* ¶ 2(d)); (3) conduct her work in compliance with national and local standards (*Id.* ¶ 2(g)); and (4) accept calls from SHP personnel to evaluate medical issues (*Id.* ¶ 2(i)).

While each provision identified by Plaintiff specifies some form of control over Bennett-Baker, the contract does not control how she diagnoses and treats patients. The contract merely states Bennett-Baker must work for two hours at the jail but does not specify *when those two hours must be worked*. Reviewing protocols does not control how Bennett-Baker practiced medicine and requiring her to abide by national standards simply ensures she complied with regulations.

The Policy and Procedure Manual for Services in Jails created by SHP establishes guidelines for Bennett-Baker to follow but also makes clear that independent contractors make the medical decisions. (*See* R. 74-25). Plaintiff does not establish that SHP attempted to control the actual medical decisions made by Bennett-Baker. The control factor weighs in favor of an independent contractor relationship.

The second factor examines whether an individual is "engaged in a distinct occupation or business." *Ky. Unemployment Ins. Comm'n*, 91 S.W.3d at 579. Kentucky courts assess whether a person has their own independent business or is performing work for an individual entity. *See Sam Horne*, 279 S.W.2d at 757. Multiple rulings in the Eastern District have interpreted this factor to "include contemplation of the degree of skill required for, and complexity of, the individual's occupation." *Curtis v. Coast to Coast Health Care Servs., Inc.*, No. 3:15-cv-070, 2017 WL 3470919, at *5 (E.D. Ky. Aug. 11, 2017) (citing *Foncannon v. Southeastern Emergency Physicians, LLC*, No. 6:16-cv-039, 2017 WL 1362029, at *3 (E.D. Ky. April 11, 2017)). Bennett-Baker's contract does not preclude her from seeking other employment. (*See* R. 126-2). The lack of control over Bennett-Baker's other potential employment mirrors the work of an independent contractor.

Next, Kentucky courts consider whether work is done "under the direction of the employer or by a specialist without supervision." *Ky. Unemployment Ins. Comm'n*, 91 S.W.3d at 579. This includes consideration of whether the individual is a "specialist with unusual training and skill." *See Sam Horne*, 279 S.W.2d at 757. Nurse Bennett-Baker is a specialist, trained in the practice of medicine. Again, Bennett-Baker's contract states that "SHP shall exercise no control over the professional practice of medicine by Nurse Practitioner." (R. 126-2 ¶ 6). The nature of Bennett-

Baker's specialty and the clear line dictating her power over medical decisions weighs in favor of an independent contractor relationship.

Factor four contemplates the "skill required in the particular occupation." *Ky. Unemployment Ins. Comm'n*, 91 S.W.3d at 579. Kentucky courts distinguish between skills that require specialty and those that do not require significant training. *See id.*; *Sam Horne*, 279 S.W.2d at 757. Skills requiring education or practice indicate independent contractor status. *Id.* The skills of a nurse practitioner, like Bennett-Baker, require significant education and training. This fact favors independent contractor status.

When an employer provides the instrumentalities, tools, and place of work for the individual, it favors the finding of a principal-agent relationship. *Sam Horne*, 279 S.W.2d at 757. Other than Bennett-Baker stating at deposition that SHP did not provide her with a phone (R. 47 at 40), neither party directly addresses this factor, and it will not weigh in favor of either.

The next two factors weigh the length of time the person is employed and the method of payment. *Ky. Unemployment Ins. Comm'n*, 91 S.W.3d at 579. If the employment period is short, it weighs in favor of independent contractor status. Restatement (Second) of Agency § 220 cmt. j (1958). Longer employment favors an agency relationship. *Id.* Payment by the hour indicates a principal-agent relationship, and payment by the job leans toward independent contractor status. *Id.*; *Sam Horne*, 279 S.W.2d at 757. The contract ran for a one-year period and automatically renewed annually. (R. 126-2 ¶ 1.1(B)). SHP or Bennett-Baker could also terminate the contract with 30 days' written notice. (R. 126-2 ¶ 5). There was a base fee of $1,300 for services and Bennett-Baker received a single monthly payment.

The potential length of the contract is different from typical, job-by-job agreements for independent contractors, suggesting an employee/employer relationship. The payment method,

however, resembles neither a typical employee payment schedule nor the by-the-job payment standard in independent contractor relationships. But Bennett-Baker was responsible for paying her own taxes, more closely resembling an independent contractor responsibility. The payment factor leans toward a principal-agent relationship but does not weigh heavily in favor of either outcome.

Considered next is the regular business of the employer. An individual hired to perform a job within the same industry as the employer is likely to be considered an employee. *Sam Horne*, 279 S.W.2d at 757. SHP regularly contracts with medical professionals to provide healthcare services in correctional facilities. The employment contract between SHP and Karen Bennett-Baker states as much: "SHP is contracted to provide health care services to jail inmates. . . ." (R. 126-2 at 1). The agreement between both parties is in the regular course of business and weighs in favor of a principal-agent relationship.

The intent of the parties when they are creating the relationship is the next factor. This requires examination of the contract language, circumstantial evidence, and industry custom. *Sam Horne*, 279 S.W.2d at 758; *Ky. Unemployment Ins. Comm'n*, 91 S.W.3d at 581; *see* Restatement (Second) of Agency § 220 cmt. i (1958). As previously analyzed, the contract between SHP and Bennett-Baker explicitly states she will serve as an independent contractor. (R. 126-2 ¶ 6). Plaintiff asserts that certain provisions of the contract indicate the relationship between the parties was more akin to an employee-employer relationship than that of an independent contractor and argues there is a genuine issue of material fact. The contract states, however, that Bennett-Baker must be "on-call to the medical staff of the Whitley 24 hours per day, 7 days per week," (R. 126-2 ¶ 1.3), and that she "agrees to provide professional services as set forth herein fifty[-]two (52) weeks per year." (R. 126-2 ¶ 2). These terms by themselves could indicate an employer-employee

relationship, but the agreement as a whole suggests neither party wished to engage in a principal-agent relationship.

The final factor, added by the Kentucky Supreme Court in 2002, considers whether the purported principal is a business. *Ky. Unemployment Ins. Comm'n*, 91 S.W.3d at 580. There has not been extensive analysis of how this factor should be used, but another court in the Eastern District of Kentucky interpreted it as an examination of "whether the employer or principal's business is still operating." *Curtis*, 2017 WL 3470919, at *8. If the business is still operating, the relationship is more likely to be that of an independent contract. *Id.* SHP is still in business, and this point suggests there was an independent contractor agreement.

The length of employment, method of payment, and regular business of employer factors all weigh in favor a principal-agency relationship. Those factors, however, are less persuasive than the factors of control, skill required, or intent of the parties. Those more persuasive factors strongly indicate an independent contractor relationship. Accordingly, the Court finds that there is no genuine issue of material fact and that Karen Bennett-Baker was an independent contractor for SHP.

*B. Ostensible Agency*

SHP can still be held vicariously liable under the doctrine of ostensible agency. Plaintiff argues that an ostensible agency relationship can exist for third-party companies supplying independent contractors to work in jails, as well as to hospitals.

Generally, the theory of ostensible agency has been used by Kentucky courts to determine whether a hospital should be held liable for the actions of an independent contractor working at its facilities. *See Paintsville Hospital Company v. Rose*, 683 S.W.2d 255 (Ky. 1985); *Sneed v. Univ. of Louisville Hosp.*, 600 S.W.3d 221 (Ky. 2020); *Roberts v. Galen of Virginia, Inc.*, 111 F.3d 405

(6th Cir. 1997). Ostensible agency is a variant of apparent authority, and the Kentucky Supreme Court adopted the Restatement Second's definition in *Paintsville Hospital Company v. Rose*:

> One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

683 S.W.2d. at 257 (quoting Restatement (Second) of Agency § 267 (1958)). This apparent authority is "a matter of appearances, fairly chargeable to the principal and by which persons dealt with are deceived, and on which they rely." *Williams v. St. Claire Med. Ctr.*, 657, S.W.2d 590, 595 (Ky. Ct. App. 1983) (quoting *Union Central Life Ins. Co. v. Glasscock*, 110 S.W.2d 681, 685 (Ky. 1937)).

The burden of proving an ostensible agency claim is on the "party alleging its existence." *Sneed*, 600 S.W.3d at 232 (quoting *Wright v. Sullivan Payne Co.*, 839 S.W.2d 250, 253 (Ky. 1992)). Additionally, "manifestations of the principal to the other party to the transaction are interpreted in light of what the other party knows or should know instead of what the agent knows or should know." *Id.* (quoting *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 257 (Ky. 1985)). To determine whether an ostensible agency relationship exists, Kentucky courts have heavily weighed the manner the principal holds itself out to the public. *See Roberts v. Galen of Virginia, Inc.*, 111 F.3d 405 (6th Cir. 1997), *reversed on other grounds in Roberts v. Galen of Virginia, Inc.*, 525 U.S. 249 (1999) (explaining the history of cases on ostensible agency in Kentucky).

In *Paintsville Hospital*, the Kentucky Supreme Court held that "it is unreasonable to put a duty on the patient to inquire of each person who treats him whether he is an employee or independent contractor of the hospital." 683 S.W.2d at 258. The court quoted a New Jersey case to assist with interpretation of ostensible agency:

> **Absent notice to the contrary**, therefore, plaintiff had the right to assume that the treatment received was being rendered through hospital employees and that any negligence associated with that treatment would render the hospital responsible.

*Id.* (quoting *Arthur v. St. Peters Hosp.*, 405 A.2d 443, 447 (N.J. Super. Ct. Law Div. 1979) (emphasis added).

In *Sneed v. University of Louisville Hospital*, the Kentucky Supreme Court ruled that the hospital's attempt to notify "patients that the physicians who provided treatment at the Hospital were not employees of the Hospital" was enough to determine there was no ostensible agency relationship. 600 S.W.3d at 233. In *Sneed*, the court analyzed two non-binding rulings. First, it considered the Kentucky Court of Appeals decision in *Floyd v. Humana of Virginia, Inc.*, 787 S.W.2d 267 (Ky. App. 1989). There, the court held that because the patient read and signed an admission form that stated the treating physicians were independent contractors, the hospital was not liable under a claim of ostensible agency. *Id.* at 270. Second, the court examined a Sixth Circuit ruling in *Roberts v. Galen of Virginia, Inc.* In that case, the hospital had prepared forms to notify patients that the treating physicians were not its agents. Although the patient was unable to read the forms because of her condition, the Sixth Circuit held the attempt to notify defeated a claim of ostensible agency. *Roberts*, 111 F.3d at 413.

This Court has not found another instance in Kentucky where the theory of ostensible agency was applied to jails or the companies contracting with them for medical professionals. There are factual similarities between this case and relevant case law regarding ostensible agency. Specifically, this case, *Sneed*, and *Roberts* all involve companies hiring professional independent contractors to provide medical care.

After those significant similarities, there is a divergence in the factual record. For doctors and hospitals, there is a public assumption of an agency relationship. *See Sneed*, 600 S.W.3d at

233; *Roberts*, 111 F.3d at 412 ; *Paintsville Hospital Co.*, 683 S.W.2d at 285. But there is no similar assumption regarding the relationship between SHP and the individuals practicing medicine at the WCDC. This case further differentiates itself because Bennett-Baker was not physically present during Mays's health episodes, while the doctors in *Sneed* and *Roberts* were directly treating the patient. Still, Bennett-Baker was responsible for diagnosing, formulating a treatment plan, and prescribing medication.

These factual differences, however, do not preclude the argument that Bennett-Baker was operating as an ostensible agent for SHP. Documents provided by SHP to Mays help determine whether an ostensible agency relationship existed. An Admissions Medical Data Form provided by SHP states:

> I hereby give my consent to professional services to be provided to me by and through Southern Health Partners, Inc. Further, I release Southern Health Partners, Inc., its staff, the County, the Sheriff, Jailer, and his/her staff from all responsibility and I assume personal responsibility for conditions that may occur as a result of my not requesting services and/or refusing treatment as prescribed by the medical staff of the facility and/or outside consultation services.

(R. 39-4 at 2). Unlike *Sneed* or *Roberts*, SHP did not notify Mays that she would be treated by independent contractors. Instead, it explicitly stated the opposite. SHP further argues that "Terri Beth Mays would not have seen the Admission Medical Data Form completed by SHP employee, Tami Hounshell, on October 30, 2021," (R. 164 at 6) which indicates she would not have read the quoted material from the document. This argument is difficult to accept considering Mays signed the form directly above Hounshell's signature. (R. 39-4 at 2).

Other forms indicate SHP was responsible for Mays' healthcare. The Authorization for Release of Medical Information to Correctional Facility (R. 74-13 at 10) states:

> I hereby authorize any hospital, clinic, physician's office, and/or health agency to provide any information they may have acquired while attending [to] me for a

> medical, dental, or psychiatric problem to Southern Health Partners, Inc. who is the medical care provider of this Correctional Facility.

The document is signed by Mays and is adorned with SHP's logo at the top. Another document, the Patient's Consent for Treatment (R. 74-13 at 11), states:

> I further authorize the County Jail medical department to evaluate and treat any condition that I may have or develop while in the custody of the County Jail. My signature below hereby authorizes other healthcare provides to provide medical information regarding my medical condition to the staff of Southern Health Partners while in the custody of the County Jail.

Again, the document has SHP letterhead and is signed by Mays. *Id.* SHP argues that the logo and lack of identifying language does not indicate that SHP was holding out Bennett-Baker as its agent (R. 164 at 6), but the documents indicated that only SHP would provide healthcare services for Mays while she was incarcerated at WCDC. Unlike *Sneed* and *Roberts*, SHP did not give notice that Mays would be treated by an independent contractor, nor attempted it.

SHP also argues that Mays "never sought care from and had no interaction with Karen Bennett-Baker," and, because of this, an ostensible agency relationship does not exist. (R. 164 at 6–7). Although Mays and Bennett-Baker did not directly interact, SHP took no action to notify Mays that medical decisions would be made by an independent contractor. Based on the documents provided, Mays would have justifiably relied on SHP to provide healthcare through its agents. Again, SHP has not shown that they represented to Mays that the individuals providing her healthcare at WCDC were independent contractors, unaffiliated with the company.

SHP relies on the Kentucky Supreme Court case *Roethke v. Sanger*, 68 S.W.3d 352 (Ky. 2001) in its Reply. (R. 164). In *Roethke*, the plaintiff attempted to use the ostensible agency theory to hold liable a third-party company not involved in the transaction. *Id.* at 363–364. The Kentucky Supreme Court held that when "the person claiming ostensible agency knew or should have known that no agency relationship existed with respect to the job being performed . . . the doctrine of

ostensible agency has no application." *Id.* at 364. *Roethke* can easily be differentiated from this case. SHP argues that Mays did not rely on Bennett-Baker because "she never knew Ms. Bennett-Baker existed." (R. 164, at 9). While Mays did not know of Bennett-Baker, she did rely on SHP to provide "professional services" (R. 39-4, at 2) and treatment (R. 74-13, at 11), and there is no evidence to indicate that Mays would have believed anyone outside of SHP was providing those services or treatment.

The only question that remains is whether ostensible agency should be applied differently in the case of correctional facilities. Neither party has cited any reason this should be applied differently, and the Court sees no reason to do so. For the aforementioned reasons, the Court concludes the doctrine of ostensible agency applies to the relationship between SHP and Karen Bennett-Baker.

## IV. CONCLUSION

Karen Bennett-Baker was an independent contractor for SHP at the time of Terri Beth Mays's death. SHP, however, can be held liable under the doctrine of ostensible agency. Accordingly, the Court ORDERS that Defendant Southern Health Partners, Inc.'s Motion for Summary Judgment (R. 126) is DENIED.

October 1, 2026.

**Signed By:**

***Karen K. Caldwell***

**United States District Judge**